**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| SCHUYLKILL STONE CORP. n/k/a ENVIRONMENTAL MATERIALS, LLC, Plaintiff, v. STATE AUTOMOBILE MUTUAL INSURANCE COMPANY, Defendant. | CIVIL NO. 09-5812(NLH)(AMD) OPINION |

**APPEARANCES:**

PETER A. GAUDIOSO
MCELROY, DEUTSCH, MULVANEY & CARPENTER, LLP
1300 MOUNT KEMBLE AVENUE
PO BOX 2075
MORRISTOWN, NJ 07962-2075

    On behalf of plaintiff

MICHAEL ROBERT FOX
NELSON LEVINE DELUCA & HORST, LLC
518 TOWNSHIP LINE ROAD
SUITE 300
BLUE BELL, PA 19422

    On behalf of defendant

**HILLMAN**, District Judge

    Presently before the Court are the parties' cross-motions for summary judgment on plaintiff's declaratory judgment action for insurance coverage under an insurance policy issued by defendant.[1] Specifically, plaintiff is demanding that defendant provide it a

---

    [1]Defendant removed plaintiff's complaint from state court pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000.

defense in an underlying state court case, which involves claims by homeowners for damages resulting from the faulty construction of their homes.  Plaintiff contends that defendant is obligated to provide it with a defense, and has acted in bad faith in failing to do so.  Defendant counters that the insurance policy at issue does not provide coverage to plaintiff because it was issued to a now-defunct entity.  Defendant further contends that its declination of coverage was also proper because the allegations in the underlying state court case do not trigger coverage and are subject to a coverage exclusion in the policy.  Based on these reasons, defendant also argues that it has not acted in bad faith in declining to provide plaintiff with a defense.

For the reasons expressed below, the Court finds that the insurance policy affords plaintiff coverage, but that defendant did not act in bad faith in its decision to decline coverage.

## DISCUSSION

### A.   Summary Judgment Standard

If review of cross-motions for summary judgment reveals no genuine issue of material fact, then judgment may be entered in favor of the party deserving of judgment in light of the law and undisputed facts.  See Iberia Foods Corp. v. Romeo Jr., 150 F.3d 298, 302 (3d Cir. 1998) (citation omitted); Fed. R. Civ. P. 56(c).

### B.   Background and Analysis

On April 21, 2008, thirty-nine homeowners in three residential

2

communities in Marlton and Evesham Township, New Jersey filed their tenth-amended complaint in New Jersey Superior Court alleging that the developer, The Quaker Group and its affiliates ("Quaker"), and Quaker's subcontractors, among others, defectively designed and constructed their homes in an unworkmanlike and unsatisfactory manner, and also failed to comply with building codes and laws, industry standards, design documents, and the requirements in written contracts and implied and express warranties.  (Wallach Complaint ¶¶ 61-77, Pl. Ex. B.)  The homeowners claim that their homes have sustained water damage due to the construction problems, and that they have suffered not only property damage, but also injury to their health through mold and mildew exposure.

On July 1, 2008, Quaker filed a third-party complaint against its subcontractors, including plaintiff Schuylkill Stone Corp. ("Schuylkill Stone"), which is now Environmental Materials, LLC, alleging joint-tortfeasor liability and other claims.  (Pl. Ex. C ¶ 36.)  Quaker claims that should it be held liable to the Wallach plaintiffs for conduct by any of its subcontractors, Quaker is entitled to contribution or indemnification from those subcontractors, including plaintiff here.

On August 5, 2008, plaintiff tendered a demand for a defense to defendant State Automobile Mutual Insurance Company ("State Auto").  Schuylkill Stone was a Commonwealth of Pennsylvania corporation and, as noted, is the predecessor to Environmental

3

Materials, LLC.  State Auto issued a commercial general liability policy to Schuylkill Stone with an effective date of May 10, 1999 to May 10, 2002.  State Auto declined, however, to provide Schuylkill Stone with a defense to the underlying state court action for numerous reasons.  (See Sept. 28, 2009, Declination of Coverage Letter, Pl. Ex. K.)

Through the course of this litigation, State Auto has narrowed its declination of coverage to four bases: (1) the policy was issued to Schuylkill Stone, which is now defunct, and the policy did not transfer to Environmental Materials; (2) even if the policy is valid, the Wallach plaintiffs' claims for property damage and bodily injury do not amount to an insured "occurrence" because their claims for faulty workmanship--a contractual, not tort, claim--cannot be considered an "accident," which the policy defines to constitute an "occurrence"; (3) Schuylkill Stone's claims are barred under the "Contractual Liability" provision, which excludes coverage for contractual damages that Schuylkill Stone agreed with Quaker to assume; and (4) the damage to two of the four homes Schuylkill Stone worked on manifested after the policy coverage period.

Schuylkill Stone argues that none of these bases is valid.  It further argues that not only did State Auto decline to provide a defense for incorrect reasons, it did so in bad faith.  The Court will address each of State Auto's reasons for declining coverage,

4

and then address Schuylkill Stone's bad faith claim.

### 1. Whether the State Auto policy is valid

On October 30, 2002, Schuylkill Stone sold its assets to Stone Acquisition, LLC, which was a 100-percent owned affiliated entity of Environmental Materials and established specifically to facilitate the purchase of Schuylkill Stone's assets.  One of Schuylkill Stone's assets acquired by Stone Acquisition was the State Auto insurance policy.  (Pl. Ex. A at 3.)  Stone Acquisition then merged into Environmental Materials, and Environmental Materials continued to carry out the business of Schuylkill Stone.

State Auto contends that the insurance policy prohibited such a transfer.  It also argues that because the transfer of the policy was not a result of a merger or consolidation, and therefore not properly assigned to Environmental Materials, the policy coverage extinguished when the entity Schuylkill Stone officially dissolved in June 2004.

State Auto's position is unavailing.  Even though the policy contains a clause that states, "Your rights and duties under this policy may not be transferred without our written consent," a clause such this is invalid where an assignment of the policy has been made after the insured's right to payment has already accrued. The Pennsylvania Supreme Court has explained,

> Generally, non-assignment clauses are included in insurance policies for the protection of insurers.  Such clauses are designed to guarantee that an increase of the risk of loss by a change of the policy's ownership cannot

5

occur without the consent of the insurer.  Because
non-assignment clauses limit the amount of risk that the
insurer may be forced to accept, courts will generally
strike down an insured's attempt to assign its policy to
a new insured.  Consistent with the general purposes of
non-assignment clauses, however, courts are reluctant to
restrict the assignment of an insured's right to payment
which has already accrued.  Therefore, because an
insured's right to proceeds vests at the time of the loss
giving rise to the insurer's liability, restrictions on
an insured's right to assign its proceeds are generally
rendered void.

Egger v. Gulf Ins. Co., 903 A.2d 1219, 1227 (Pa. 2006) (quoting

Continental Cas. Co. v. Diversified Indus., Inc., 884 F. Supp. 937,

948 (E.D. Pa. 1995) (discussing Nat'l Mem'l Services, Inc. v. Metro

Life Ins. Co., 355 Pa. 155, 49 A.2d 382 (1946)).[2]

In this case, it is undisputed that the claims of two of the

four Wallach plaintiffs with Schuylkill Stone stonework accrued

during the policy effective period, and before the policy transfer

(the water damage having manifested between December 2000 and March

2001 (Greenberg) and sometime before December 2001

(Smid/Heiligman)).  Therefore, the State Auto policy is still

effective to the assigned insured, Environmental Materials, should

these claims qualify Environmental Materials for coverage.[3]

Accordingly, State Auto's first basis for coverage denial is

_____

[2]Both parties agree that Pennsylvania law applies to
Schuylkill Stone's claims.

[3]Discovery is ongoing in the underlying state court case,
and it is unclear when the claims of the other two Wallach
plaintiffs accrued.  As discussed below, this does not affect
State Auto's duty to defend Schuylkill Stone for the claims by
all four plaintiffs.

6

without merit.

       **2.**    **Whether the <u>Wallach</u> plaintiffs' claims for property damage and bodily injury amount to an insured "occurrence" so that State Auto's duty to defend is triggered**

Under Pennsylvania law, "[a]n insurer's duty to defend an insured in litigation is broader than the duty to indemnify, in that the former duty arises whenever an underlying complaint may 'potentially' come within the insurance coverage." <u>Frog, Switch & Mfg. Co. v. Travelers Ins. Co.</u>, 193 F.3d 742, 746 (3d Cir. 1999) (citing <u>Erie Ins. Exch. v. Claypoole</u>, 673 A.2d 348, 355 (Pa. Super. 1996)).  In examining a complaint to determine whether an insurer has a duty to defend its insured, a court "construes the factual allegations of the underlying complaint liberally in favor of the insured." <u>Id.</u> (citing <u>Biborosch v. Transamerica Ins. Co.</u>, 603 A.2d 1050, 1052 (Pa. Super. 1992)).  "[T]he particular cause of action that a complainant pleads is not determinative of whether coverage has been triggered. Instead it is necessary to look at the factual allegations contained in the complaint." <u>Mut. Benefit Ins. Co. v. Haver</u>, 725 A.2d 743, 745 (Pa. 1999) (citations omitted).

The State Auto policy provides coverage for "bodily injury" or "property damage," but only if that damage is caused by an "occurrence," which means "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."  State Auto's position is that the <u>Wallach</u> plaintiffs' claims and resulting damages do not constitute an "accident."

State Auto views the _Wallach_ plaintiffs' allegations of water damage caused by Schuylkill Stone, among others, to assert faulty workmanship claims sounding in contract, which cannot be considered sufficiently fortuitous to constitute an "occurrence" or an "accident."

Schuylkill Stone counters that gist of the _Wallach_ action sounds in tort.  The underlying complaint alleges that Quaker, and Quaker's subcontractors, including Schuylkill Stone, failed to comply with industry standards because Schuylkill Stone installed a defective product (the stone veneer).  Schuylkill Stone argues that this claim sounds in tort, which is further evidenced by Quaker's third-party claims against Schuylkill Stone for joint tortfeasor liability.  Because the _Wallach_ plaintiffs allege that Quaker and its subcontractors, including Schuylkill Stone, acted tortiously when they constructed their homes, causing them property damage and personal injury, such a claim constitutes an "occurrence," and therefore State Auto is required to provide Schuylkill Stone with a defense.

The question of law to be decided, therefore, is whether the _Wallach_ claims can be considered an "occurrence" so that State Auto's duty to defend is triggered.  Another judge in this District recently has had the occasion to address the almost identical question involving the same parties.  In _Wausau Underwriters Ins. Co. v. State Auto. Mut. Ins. Co._, 557 F. Supp. 2d 502, 511 (D.N.J.

2008), Judge Joseph Irenas considered whether a state court complaint by homeowners against a developer and its subcontractors, including Schuylkill Stone, contained claims that triggered Wausau Underwriters Insurance Company's duty to defend under the same policy language in the State Auto policy in this case.[4]  There, the complaint claimed,

> The design, construction and workmanship at the condominiums at Laurel Creek is defective, improper, utilized inappropriate materials and/or poor workmanship including but not limited to, the following: . . .
>
> m. the stone fascia located on the outside of all of the homes is deteriorating . . .
>
> The construction defects described herein, although not immediately apparent, existed when these homes were built and sold by the defendants . . .

---

[4]After Schuylkill Stone filed its summary judgment brief citing to Judge Irenas's Wausau Opinion, Schuylkill Stone's counsel was alerted to the fact that following the publication of the Wausau Opinion, the parties in that case entered into a settlement agreement, which included a provision that prohibited Schuylkill Stone and State Auto from citing to or relying "in any way" on Judge Irenas's Opinion in the future.  (See Docket No. 92 at 4.)  Schuylkill Stone's current counsel was not counsel for Schuylkill Stone in the Wausau matter, and was not aware of that agreement.  Schuylkill Stone's counsel subsequently filed an amended brief, which omitted any citation to the Wausau decision. Apparently in accord with the agreement, State Auto did not cite to the case in its briefing, although it does not appear that State Auto's current counsel was a signatory to that agreement.

Regardless of whether the parties have agreed to act as if the Wausau Opinion does not exist, Judge Irenas has not vacated his decision, and it has not otherwise been overturned or abrogated.  The case therefore stands as valid persuasive authority that this Court is free to consider.  Indeed, even if Schuylkill Stone's counsel had been aware of the agreement and neither party ever cited to the decision, a simple search through the Court's independent research would have instantly revealed its existence.

9

> Defendants failed to properly design and/or manufacture
> the products listed herein which were used on the
> premises of Laurel Creek, and failed to adequately warn
> foreseeable users of the potential dangers of these
> products . . .
>
> As a result of inadequate design, manufacture and
> inadequacy of the warnings, the condominium owners
> represented by the plaintiff suffered or are at risk to
> suffer damage to their personal property regarding both
> the personal property itself as well as to surrounding
> areas in effecting a repair of the defective product, and
> will also suffer a diminution in the overall property
> value of their homes.

Wausau, 557 F. Supp. 2d at 512.

Judge Irenas considered Pennsylvania law and how the courts in
Pennsylvania have interpreted the standard CGL insurance provisions
concerning "occurrence" and "accident," and then applied those
interpretations to the claims in the Laurel Creek complaint.
First, Judge Irenas analyzed the two main Pennsylvania Supreme
Court cases that have addressed the language: Kvaerner Metals Div.
of Kvaerner U.S., Inc. v. Comm. Union Ins. Co., 908 A.2d 888 (Pa.
2006) and Donegal Mut. Ins. Co. v. Baumhammers, 938 A.2d 286 (Pa.
2007).  Both of these cases explained that "accident," as
ordinarily used, is "an unexpected and undesirable event, or
something that occurs unexpectedly or unintentionally," with "[t]he
key term in the ordinary definition of 'accident' [being]
'unexpected,'" which "implies a degree of fortuity."  Kvaerner, 908
A.2d at 898.  The cases also explained that an "injury therefore is
not 'accidental' if the injury was the natural and expected result

10

of the insured's actions."   <u>Baumhammers</u>, 938 A.2d at 292.

Even with the same interpretation of "occurrence" in mind, these two cases diverged on their result.  Judge Irenas succinctly summarized the cases:

> In <u>Kvaerner</u>, the insured contracted with a third party to design and construct a coke oven battery.  When many alleged defects were discovered in the insured's work, the third party sued the insured, in a breach of contract action, for the replacement value of the battery or the difference in value between what was warranted under the contract and the defective battery.  The insurer denied coverage and the insured sought a declaratory judgment that the insurer had a duty to defend and indemnify under the applicable CGL policy.  The Pennsylvania Supreme Court concluded that no accident, and therefore no occurrence, was pled in the underlying complaint. Interpreting the complaint to assert breach of contract claims based on faulty workmanship, the court explained that the factual allegations lacked the "degree of fortuity" required by the definition of "accident." The court further elaborated,
>
>> provisions of a general liability policy provide coverage if the insured work or product actively malfunctions, causing injury to an individual or damage to another's property.  Contractual claims of poor workmanship [do] not constitute the active malfunction needed to establish coverage under the policy.
>
> On the other hand, the Pennsylvania Supreme Court in <u>Baumhammers</u> held that an accident had occurred, and therefore the insurance company was required to defend the underlying suit.  In that case, the underlying suit was a negligence claim against the parents of an adult son who killed five people and injured a sixth.  The insurance company sought a declaration that they were not required to defend or indemnify the parents under their homeowners' insurance policy, asserting that the intentional act of killing five people and injuring another was not an "accident."  The underlying complaint asserted negligence on the part of the parents, in failing to take away their son's gun and failing to alert

11

mental health professionals or law enforcement about his dangerous propensities. In holding that an "accident" had occurred, the court explained, "'the test of whether an injury is a result of an accident is to be determined from the viewpoint of the insured and not from the viewpoint of the one that committed the act causing the injury.'" Applying Kvaerner's definition of "accident," the court further concluded that

> the claims asserted by Plaintiff present the degree of fortuity contemplated by the ordinary definition of 'accident.' ... The extraordinary shooting spree ... resulting in injuries to Plaintiffs cannot be said to be the natural and expected result of Parents alleged acts of negligence. Rather, Plaintiffs' injuries were caused by an event so unexpected, undesigned and fortuitous as to qualify as accidental within the terms of the policy.

Wausau, 557 F. Supp. 2d at 513-14 (internal citations omitted).

Facing "the difficult task of determining whether the instant case [was] more like Kvaerner or Baumhammers," Judge Irenas found that based on the sparse factual allegations of the Laurel Creek complaint, he could not rule out the possibility that the alleged manufacturing or design defect in the stone fascia resulted from Schuylkill's negligence. Id. at 514. Judge Irenas therefore found that the complained-of damage could be interpreted to result from an "occurrence" under the Wausau policy. Id. at 515. In making his decision, Judge Irenas found Kvaerner, and other similar faulty workmanship cases, to be distinguishable from the Laurel Creek case because Schuylkill had no contractual relationship with the Laurel Creek plaintiffs, and the underlying claims were not for breach of contract. Id. at 514. In contrast, Judge Irenas found the Laurel

12

Creek case to be similar to Baumhammers, explaining that "[a]lthough Baumhammers was a much clearer case of an accident from the insureds' perspective, the underlying complaint alleged negligence of the insureds."  Id. at 515.  Judge Irenas elaborated,

> While the Laurel Creek Complaint also asserts breach of
> warranty . . . it would appear that the warranty which
> allegedly has been breached is a warranty implied by law.
> The alleged damage in this case does not result from
> Schuylkill's alleged failure to live-up to standards for
> which it bargained and established itself.  Under these
> circumstances, it is more difficult to conclude that the
> damage caused by Schuylkill's alleged failures was not
> fortuitous.

Id.

Unlike in Wausau, the Wallach complaint at issue before this Court does not present the same "difficult task" of determining whether it is more like Kvaerner or Baumhammers.  If the Wallach plaintiffs alleged that Quaker, and its subcontractors, including Schuylkill Stone, contracted with them to install a stone facade according to certain plans and specifications that ultimately malfunctioned--a faulty workmanship claim that State Auto contends is alleged in the Wallach complaint--then Kvaerner would clearly bar Schuylkill Stone's claim under the State Auto insurance policy. Indeed, under those circumstances, to permit such claims would "convert CGL policies into performance bonds, which guarantee the work, rather than like an insurance policy, which is intended to insure against accidents."  Kvaerner, 908 A.2d at 899; see also

13

Millers Capital Ins. Co. v. Gambone Bros. Development Co., Inc., 941 A.2d 706, 713 (Pa. Super. 2007) (finding that the underlying complaints were based on claims for faulty workmanship and therefore, in accord with Kvaerner, were not "occurrences").

No such claim exists in this case, however.  The Wallach plaintiffs allege that Quaker negligently failed to comply with industry standards in the construction of their homes.[5]  Part of that negligence was allegedly perpetrated by Quaker's subcontractor Schuylkill Stone, which installed the stone facade to four of the plaintiffs' homes.  The plaintiffs did not contract with Schuylkill Stone for a specific product and installation procedure, and then allege that Schuylkill Stone's failure to follow those specifications resulted in the foreseeable consequence of water infiltration.  Instead, the Wallach plaintiffs claim that they were subjected to Schuylkill Stone's negligent work performance and negligently manufactured products in violation of industry standards.  Such negligence, as opposed to contractual breaches or intentional conduct, is the definition of "accident."  See, e.g., Wausau, 557 F. Supp. 2d at 515 n.35 ("Consider an automobile collision resulting from a driver's negligence.  Such an 'accident'

---

[5]Just like in Wausau, the Wallach plaintiffs have also asserted claims for breaches of the implied warranties.  Several lower Pennsylvania courts have held "that an action for breach of warranty may be considered an action in tort for the purposes of contribution."  Greiner v. Erie Ins. Exchange, 2001 WL 1807642, *7 (Pa. Com. Pl. 2001) (discussing cases).

results from the driver's failure to live up to the ordinary
standard of care imposed by law."); see also Williams v. Hilton
Group PLC, 93 Fed. Appx. 384, 386 (3d Cir. 2004) (quoting eToll,
Inc. v. Elias/Savion Advertising, Inc., 811 A.2d 10 (Pa. Super. Ct.
2002)) (explaining that the "gist of the action" doctrine "is
designed to maintain the conceptual distinction between breach of
contract claims and tort claims [by] preclud[ing] plaintiffs from
recasting ordinary breach of contract claims into tort claims," and
that the difference between contract and tort claims is as follows:
"Tort actions lie for breaches of duties imposed by law as a matter
of social policy, while contract actions lie only for breaches of
duties imposed by mutual consensus agreements between particular
individuals.").

       To further support the fortuitous nature of the Wallach
plaintiffs' claims are their claims for not only property damage as
a result of Schuylkill Stone's negligence, but also for their
personal injuries.  They claim that because of Schuylkill Stone's
failure to abide by industry standards, their homes were
infiltrated with water, which caused mold and mildew.  This mold
and mildew then caused them to suffer from, or be exposed to the
potential for, serious health problems.  These personal injury
claims take the Wallach case well beyond Kvaener, and even Wausau
where only property damage claims were alleged, and fall more in
line with Baumhammers.

Under Pennsylvania law, "[a]fter determining the scope of coverage, the court must examine the complaint in the underlying action to ascertain if it triggers coverage." <u>General Acc. Ins. Co. of America v. Allen</u>, 692 A.2d 1089, 1095 (Pa. 1997). "If the complaint against the insured avers facts that would support a recovery covered by the policy, then coverage is triggered and the insurer has a duty to defend until such time that the claim is confined to a recovery that the policy does not cover." <u>Id.</u> In this case, the claims of the <u>Wallach</u> plaintiffs as currently alleged in their tenth-amended complaint against Quaker and its subcontractors, including Schuylkill Stone, and further imputed onto Schuylkill Stone through Quaker's third-party joint tortfeasor claims, can be considered an "occurrence" under the Stat Auto policy. Therefore the <u>Wallach</u> plaintiffs' claims trigger State Auto's duty to defend Schuylkill Stone in that case.

### 3. Whether Schuylkill Stone's claims are barred under the "Contractual Liability" provision

The State Auto policy contains a "Contractual Liability" provision, which excludes coverage for damages incurred by Schuylkill Stone as a result of "the assumption of liability in a contract or agreement." The subcontractor agreement between Quaker and Schuylkill Stone contains a provision where Schuylkill Stone agrees to hold Quaker harmless from "any claim, fines or litigation . . . resulting from [Schuylkill Stone's or Schuylkill Stone's

16

employees'] performance of the work."  State Auto argues that
because Schuylkill Stone contracted with Quaker to assume all
liability for its work, and such assumption of liability is
specifically excluded from coverage, there is no coverage for
Schuylkill Stone under the policy.

Schuylkill Stone counters that the assumption of liability for
its conduct in its contract with Quaker is exempted from the
Contractual Liability exclusion.  The exemption provides that the
policy affords coverage for an "insured contract," which is where
the insured "assumes the tort liability of another party to pay
for" bodily injury or property damage to a third party.  Schuylkill
Stone argues that in its contract with Quaker, it assumed liability
for "any claim," which encompasses the Wallach plaintiffs' tort
claims.  Thus, Schuylkill Stone argues that its contract with
Quaker is an insured contract, which is exempted from the
exclusion.

In order for the Contractual Liability exclusion to apply to
Schuylkill Stone, the Wallach claims must only sound in contract.
Because the Court has already determined that the Wallach
plaintiffs have asserted tort claims directly and derivatively
against Schuylkill Stone, the exclusion does not apply.
Accordingly, State Auto's declination of coverage on the
Contractual Liability exclusion is unavailing.

17

4.    **Whether the damage to two of the four homes Schuylkill Stone worked on manifested after the policy coverage period**

State Auto argues that in the event the Court finds that Schuylkill Stone is entitled to a defense, State Auto should only be obligated to defend the claims of the two homeowners where it has been determined that their damages manifested during the policy coverage period, and not for the other two homeowners, whose damage was not discovered until 2006, as pleaded in the complaint. (Wallach Complaint ¶ 72, Pl. Ex. B.)  Schuylkill Stone argues that discovery is still ongoing as to the other two homeowners as to when their damages first arose, but regardless of that issue, because State Auto's duty to defend is triggered by some of the claims, it is obligated to provide a defense for all of the claims.

The Court agrees with Schuylkill Stone.  "[I]f a single claim in a multiclaim lawsuit is potentially covered, the insurer must defend all claims until there is no possibility that the underlying plaintiff could recover on a covered claim." Frog, Switch & Mfg. Co., Inc. v. Travelers Ins. Co., 193 F.3d 742, 746 (3d Cir. 1999) (citing Erie Ins. Exch. v. Transamerica Ins. Co., 533 A.2d 1363, 1368 (Pa. 1987)).  Although State Auto may not ultimately have to indemnify Schuylkill Stone for those two homeowners' claims, it still must provide Schuylkill Stone with a defense to those claims. Thus, this basis for declining coverage is without merit.

### 5.   Whether State Auto acted in bad faith

State Auto has moved for summary judgment in its favor on Schuylkill Stone's claim that State Auto acted in bad faith when it declined to provide Schuylkill Stone with a defense.[6]  In Pennsylvania, although there is no common law remedy for bad faith on the part of insurers, the Pennsylvania Legislature has created a statutory remedy, which provides for the imposition of interest, punitive damages, and attorney's fees and costs onto the insurer for its bad faith denial of coverage.  See 42 Pa. C.S.A. § 8371.

To prove a bad faith claim against an insurer, an insured must show clear and convincing evidence of bad faith.  Terletsky v. Prudential Property and Cas. Ins. Co., 649 A.2d 680, 688 (Pa. Super. 1994) (citations omitted).  This is done through demonstrating that the insurer "did not have a reasonable basis for denying benefits under the policy and that [the insurer] knew or recklessly disregarded its lack of reasonable basis in denying the claim."  Id. (citations omitted).

In this case, State Auto argues that because it based its declination of coverage on its reasonable interpretation of applicable legal precedent, there can be no finding of bad faith.

---

[6]Schuylkill Stone has not specifically moved for summary judgment on its bad faith claim, except in the context of supporting its claim for attorney's fees and costs in bringing its declaratory judgment action.  Because the determination as to whether State Auto acted in bad faith is a question of law, how the claim is raised for consideration is inconsequential.

In contrast, Schuylkill Stone contends that because (1) State Auto was aware that the same policy language had been previously interpreted to afford coverage, (2) evidence provided to State Auto by Schuylkill Stone showed that at least two of the Wallach plaintiffs' claims arose during the policy period, and (3) State Auto failed to undertake any independent investigation into the Wallach matter, State Auto intentionally, knowingly, and unreasonably declined to provide Schuylkill Stone with a defense under the policy.

Prior to Judge Irenas's decision in Wausau, the case law was not especially clear on what allegations in a complaint constituted an "occurrence" as defined in standard CGL policies. Indeed, when Judge Irenas addressed the question in June 2008, he called it a "difficult task." At that point, any declination of coverage may have been reasonable. See Terletsky, 649 A.2d at 690 (finding that the insurance company was reasonable in declining coverage when it adopted one federal court's conclusion that an insured could not "stack" his insurance because Pennsylvania law regarding the "stacking" issue was unsettled). As discussed above, however, Judge Irenas considered identical policy language in the context of homeowners' property damage claims against Schuylkill Stone, and found that such claims triggered the insurer's duty to defend. Thus, prior to Schuylkill Stone's tender of its defense to State Auto, State Auto was aware that at least one court had considered

its identical arguments and rejected them.

As evidenced by the Terletsky case, State Auto's failure to adopt one federal court's view of the issue, and its continued reliance upon its own interpretation of state law, is not by itself an act of bad faith.  But, as noted above, despite Judge Irenas' decision being published and remaining good law, State Auto agreed with Schuylkill Stone and the other insurer defendants to never rely upon that decision in future litigation.  State Auto's agreement to act as if the Wausau decision does not exist, and to steadfastly maintain its prior position, could be evidence of motive of self-interest or ill will required for a finding of bad faith.  An insurance company that agrees to settle an adverse case so long as that case can never be used against it in the future, thereby providing the insurer with a cloak of innocence to "reasonably" deny the same claims to different insureds, appears to us to be at best a questionable practice even if it appears to foster settlements.

However, here, Schuylkill Stone also agreed to not use the Wausau case against State Auto.  Thus, Schuylkill Stone cannot say that State Auto unreasonably denied coverage based on State Auto's knowledge of the most recent state of the law, when at the same time it mutually agreed to act as if that law did not exist. Moreover, even where there is evidence of "questionable conduct

21

giving the appearance of bad faith,"[7] that evidence "is not sufficient to establish a bad faith refusal to provide coverage if the insurer had a reasonable basis for denying the claim." Post v. St. Paul Travelers Ins. Co., 609 F. Supp. 2d 382, 385 (E.D. Pa. 2009). Up until this point, the law has not been so definitive as to require a finding that State Auto did not have a reasonable argument based on the existing case law to decline to provide Schuylkill Stone with a defense. Consequently, although the Court has found that State Auto erroneously declined coverage, the Court cannot find that it did so in bad faith.

## CONCLUSION

Because the state court Wallach complaint contains allegations that trigger State Auto's duty to defend under its policy issued to Schuylkill Stone, and because that policy is still effective to Schuylkill Stone's successor-in-interest, Environmental Materials, State Auto improperly declined to afford Schuylkill Stone/Environmental Materials with a defense in the underlying state court case. Accordingly, the Court grants

---

[7] The issue of the ethics of the agreement not to cite the Wausau matter is not presently before the Court, but we question how one squares such an agreement with New Jersey Professional Conduct Rule 3.3. New Jersey RPC 3.3(a)(3) commands, "A lawyer shall not knowingly . . . fail to disclose to the tribunal legal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel." As noted above, counsel for Schuylkill Stone and State Auto are different from counsel who represented them in the Wausau matter.

22

plaintiff's motion for summary judgment on its declaratory judgment claim against State Auto.  Because, however, State Auto did not decline coverage in bad faith, the Court grants State Auto's motion for summary judgment on plaintiff's bad faith claim.

An appropriate Order to this effect will be entered.  The parties shall confer and provide the Court with a proposed Order of Judgment within 10 days.


Date: August 17, 2010              s/ Noel L. Hillman

At Camden, New Jersey              NOEL L. HILLMAN, U.S.D.J.